UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RHONDA G. PUGH,

    Plaintiff,

v.                                         Case No:   8:14-cv-1293-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

    Plaintiff, Rhonda G. Pugh, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.**    **Social Security Act Eligibility**

    The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

On September 28, 2010, Plaintiff filed an application for supplemental security income asserting a disability onset date of June 1, 2008. (Tr. p. 134, 155). Plaintiff's application was denied initially on June 7, 2011, and on reconsideration on February 3, 2011. (Tr. p. 78-84, 90-95). A hearing was held before Administrative Law Judge Robert Ballieu on November 20, 2012. (Tr. p. 31-50). The ALJ issued an unfavorable decision on January 25, 2013. (Tr. p. 11-30). On February 11, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. p. 7-10). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 2, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 6).

### D. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can

perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of Plaintiff's application, September 28, 2010. (Tr. p. 16). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizophrenia with psychosis, bipolar disorder, and major depressive disorder. (Tr. p. 16). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926). (Tr. p. 18). Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("R.F.C.") to perform the full range of work at all exertional levels, but with the following non-exertional limitations: "[s]he is able to understand, remember and carry out simple step by step instructions, interact appropriately with supervisors, coworkers, and occasionally with the general public, maintain attention and concentration for two hours at a time and, adapt to routine changes in the workplace." (Tr. p. 19).

At step four, the ALJ found that Plaintiff has no past relevant work experience. (Tr. p. 23). At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and R.F.C., that there are jobs that exist in significant numbers in the national economy which she is able to perform. (Tr. p. 24). Relying on the testimony of a vocational expert ("V.E."), the ALJ found that Plaintiff would be able to perform the work of a silverware wrapper, assembler, and hand packager. (Tr. p. 24). The ALJ concluded that Plaintiff has not been under a disability, as

defined in the Social Security Act, since September 28, 2010, the date her application was filed. (Tr. p. 24).

## II. Analysis

Plaintiff raises five issues on appeal: (1) whether the ALJ erred in giving substantial weight to the report of the non-examining psychological consultant, Sheldon Levy, Ph.D.; (2) whether the ALJ failed to develop the facts fully and fairly; (3) whether the ALJ erred in finding that Plaintiff's chronic back pain was non-severe; (4) whether the ALJ erred in finding that Plaintiff was not entirely credible; and (5) whether the ALJ erred at step five of the sequential evaluation. The court will examine each issue in turn.

### A. Whether the ALJ erred in giving substantial weight to the report of non-examining psychological consultant, Sheldon Levy, Ph.D.

Plaintiff alleges that the ALJ erred in giving substantial weight to the report of Dr. Levy, a non-examining state psychological consultant. (Doc. 21 at 12). Plaintiff contends that Dr. Levy's opinion that Plaintiff is not disabled is inconsistent with the record as a whole and entitled to little or no weight under 20 C.F.R. § 1527. (Doc. 21 at 14). In particular, Plaintiff argues that Dr. Levy's findings that Plaintiff experiences no hallucinations, does not have schizophrenia, lives with her mother, that she is stable, does not need reminders to take care of her personal needs, that she is not significantly limited in her ability to understand short and simple instructions, are all directly controverted by evidence in the record. (Doc. 21 at 14-17). The Commissioner responds that the ALJ's opinion demonstrates that he properly considered all the relevant evidence and found Dr. Levy's findings were consistent with the entire record. (Doc. 24 at 6).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012). State agency consultants are highly qualified

specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if evidence supports their opinions. *See* 20 C.F.R. § 416.927(e)(2)(i).

Here, the record indicates that Dr. Levy reviewed Plaintiff's medical file in August 2011 and concluded that she was not disabled. (Tr. p. 76). Dr. Levy opined that Plaintiff had mild restriction of her daily living activities, mild difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. p. 71). Dr. Levy further opined that Plaintiff had moderate mental limitations in responding appropriately to changes in work and completing a normal workweek (Tr. p. 74). Nevertheless, Dr. Levy found that despite these moderate and mild limitations, Plaintiff's overall mental status showed that she was capable of simple repetitive work tasks and that her non-exertional limitations did not significantly erode her occupational base. (Tr. p. 74, 76).

In his opinion, the ALJ addressed Dr. Levy's opinion as follows:

> As for the opinion evidence, on August 4, 2011, Sheldon Levy Ph.D., a DDS psychological consultant opined that the claimant had mild restrictions of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation (Exhibit 5A). The undersigned affords Dr. Levy's opinion significant weight. Dr. Levy is a board certified psychologist who has experience with and specific knowledge of the regulations pertaining to Social Security disability and the criteria required for determining disability. Furthermore, Dr. Levy's opinion is consistent with the record as a whole.

(Tr. p. 23). The Court finds that the ALJ did not err in his decision to accord significant weight to this opinion as Dr. Levy's findings were consistent with the record. For instance, the ALJ reviewed medical evidence from 2008 showing Plaintiff's admission to the Crisis Stabilization Unit (CSU) for depression with racing thoughts. (Tr. p. 21, 253-266). At that time, Plaintiff stated that she had no problems with energy level or concentration and admitted that she had been prescribed Paxil in the past, which had helped her depression. (Tr. p. 21, 265). Plaintiff was diagnosed with major

depressive disorder and given a Global Assessment of Functioning (GAF) score of 60, which suggested no more than moderate symptoms or difficulty with social, occupational or school functioning according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR). (Tr. p. 21, 1f). No work-related limitations were noted. (Tr. p. 265-266).

The ALJ also noted that Plaintiff relocated to Florida to live with her aunt after her release from jail in Alabama. (Tr. p. 21). When Plaintiff sought care at Suncoast Community Health Center in January 2011, she reported that the court ordered her to obtain counseling after serving time for domestic charges brought by her mother who accused Plaintiff of assault with a knife. (Tr. p. 21, 273-274). Plaintiff denied any psychiatric symptoms and made no complaints, stating that she had never received regular psychiatric care but received treatment in the past for her mental condition. (Tr. p. 21, 273). The nurse diagnoses included a history of schizophrenia, tobacco abuse and bipolar disorder, unspecified with no work limitations noted. (Tr. p. 21, 273-274). When Plaintiff was seen for an annual examination in February 2011, she appeared in no acute distress and was alert and oriented with no mention of any mental impairment. (Tr. p. 270-271).

The ALJ also discussed Plaintiff's treatment by physician A.K. Vijapura, M.D., P.A. (Tr. p. 22-23, 284-288, 296-300). For instance, when she was first seen in February 2011, Plaintiff reported she would go days without sleep with increased moodiness and problems with her temper. (Tr. p. 21, 285). She alleged she could not keep a job and did not like crowds. (Tr. p. 285). However, Plaintiff's mental status examination revealed she was alert and oriented times four. (Tr. p. 285). She denied any hallucinations, but described her concentration as poor. (Tr. p. 285). Dr. Vijapura diagnosed Plaintiff with bipolar affective disorder, type II and prescribed Depakote for schizophrenia, but placed restrictions on her ability to work. (Tr. p. 285). In a follow-up visit in

March 2011, Plaintiff reported to Dr. Vijapura that her mood was stable, including no angry outbursts and her sleep had improved to more than eight hours. (Tr. p. 284). Because she reported feeling low in the afternoon, another prescription, Geodon, was added to her current regimen. (Tr. p. 284). In other follow-up visits in March and May 2011, Plaintiff reported no adverse side effects from her medication and a stable relationship with her aunt and daughter. (Tr. p. 284). These records do not reveal any work-related limitations. (Tr. p. 284). In June 2011, she continued to report no adverse side effects from her medications as well as increased energy with the ability to do housework occasionally and attending church monthly and no hallucinations. (Tr. p. 298). As before, these records do not document any restrictions on Plaintiff's ability to work. (Tr. p. 298).

Plaintiff again saw Dr. Vijapura in August 2011. (Tr. p. 296). At that time, Plaintiff reported hearing voices, increased irritability, impaired short-term memory and poor insight and judgment, but no work-related restrictions were noted. (Tr. p. 296). Plaintiff's medication was increased and when seen in October 2011, she was feeling better and going places with friends. (Tr. p. 296, 344). Plaintiff's mental status examination revealed normal speech and appropriate affect with an organized thought process. (Tr. p. 344). She denied any suicidal ideations or hallucinations and Trazodone was added to her medications. (Tr. p. 344). In November 2011, the records note that Plaintiff was non-compliant with Depakote level, even though she appeared to maintain appropriate affect and insight and organized thought, with no work limitations noted. (Tr. p. 343). When seen in April 2012, Plaintiff reported no hallucination, but sought a referral for Dr. Vijapura. (Tr. p. 332). At that time, she was alert, oriented and in no acute distress, even though her history of schizophrenia was noted (Tr. p. 332). In June 2012, treatment records reveal Plaintiff was upbeat, logical and goal directed, with her "most important issue" being a "runny nose, cough with yellow phlegm…" with no mention of any mental difficulties. (Tr. p. 334). She described no

symptoms of mania and her bipolar disorder was stable with no work limitations noted. (Tr. p. 334-335). In August 2012, although she reported increased depression, she stated she was "fairly well." (Tr. p. 342). Although she was to return to see Dr. Vijapura for medication management, there were no limitations placed on her ability to work. (Tr. p. 342-343).

Although Plaintiff alleged social limitations that restrict her ability to work, the ALJ noted that the record shows she is capable of interacting with family, going places with friends and attending church regularly, as well as interacting appropriately with her medical providers. (Tr. p. 23). While she reported depressive symptoms, the record also shows that she demonstrated a good response to medication and treatment, with an increase in energy, improved sleep, the ability to concentrate on task and help with household chores, all while denying side effects to her medication. (Tr. p. 23). When she experienced a recurrence of symptoms, the evidence was limited and sporadic with no ongoing work-related limitations noted. (Tr. p. 23). The ALJ acknowledged Plaintiff had mental impairments, but properly found that appropriate mental restrictions were incorporated in her RFC to account and allow for these conditions.

The Court is unconvinced by Plaintiff's argument that the ALJ committed an error by giving Dr. Levy's opinion significant weight given Dr. Levy's statement that he found "no evidence of schizophrenia" and "no hallucinations" and that the treatment notes and overall evidence suggest Plaintiff "is stable" and able to remember and perform short instructions, work around others and interact with others, among other things. (Doc. 21 at 14-16; Tr. p. 71-72). While Plaintiff is correct that her record indicates a diagnosis of schizophrenia and hallucinations. (Tr. p. 281, 284, 296), there is no indication that these diagnosis cause disabling limitations greater than those opined by Dr. Levy and determined by the ALJ in his RFC. As the Eleventh Circuit has stated, "the mere existence of these impairments does not reveal the extent to which they limit her

ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (providing that "a psychological disorder is not necessarily disabling. There must be a showing of related functional loss.").

The Court will not remand this case on the grounds that the ALJ relied on Dr. Levy's incorrect finding that Plaintiff lived with her mother. (Doc. 21 at 15). Plaintiff notes that she moved out of her mother's home in January 2011 and moved in with her aunt shortly thereafter. (Doc. 21 at 15). Even if true, such an error is harmless, as Plaintiff has failed to demonstrate how this error affects the determination that she is not disabled.  Remand to have the ALJ further discuss and/or correct Plaintiff's actual place of residence would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. *See, e.g., Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

Finally, Plaintiff complains that Dr. Levy's opinion was rendered before an assessment was prepared by "Dr. Vijapura's team, which again diagnosed [Plaintiff's] condition as 'schizophrenia with psychosis.'" (Doc. 21 at 17).  While accurate, the Court does not find that this is a basis for remand.  Although Dr. Levy did not review these later records, the ALJ himself reviewed all the evidence, including the records referenced by Plaintiff.  In fact, the ALJ specifically acknowledged Plaintiff's diagnosis of "schizophrenia with psychosis" and found that it constituted a severe impairment.  Thus, in reaching his RFC finding, the ALJ was cognizant of Plaintiff's diagnoses of schizophrenia with psychosis, and did not overlook this fact by giving significant weight to the opinion of Dr. Levy.

As noted above, a diagnosis, standing alone, does not reveal the extent to which Plaintiff's

ability to work is limited. *Moore*, 405 F.3d at 1213 n.6.  While Dr. Levy's opinion contained certain inaccuracies in its summary of Plaintiff's diagnoses, the ALJ's opinion demonstrates that he did not rely on Dr. Levy's review of Plaintiff's diagnoses, but on his opinion as to Plaintiff's degree of functional limitation.  Upon review of the record, the ALJ properly found Dr. Levy's opinion was supported by and consistent with the overall record and, thus, substantial evidence supports the ALJ's decision to give significant weight to Dr. Levy's opinion. (Tr. p. 16-23).  Accordingly, the Court finds that the ALJ did not err in giving Dr. Levy's opinion significant weight.

**B. Whether the ALJ failed to develop the facts fully and fairly.**

Plaintiff alleges that the ALJ erred by failing to fully and fairly develop the facts in this case. (Doc. 21 at 18).  Plaintiff argues that the ALJ should have appointed a medical expert to evaluate Plaintiff's mental impairments, as such an evaluation was requested by Dr. Levy, who the ALJ accorded significant weight, and by Dr. Anand K. Rao, the consultative examiner who examined Plaintiff regarding her complaints of back pain. (Doc. 21 at 18).

Defendant responds that Plaintiff has failed to show that a consultative examination was necessary for the ALJ to make an informed decision, and that she was prejudiced regarding the development of the record. (Doc. 24 at 13).  Defendant contends that the record provided substantial evidence to support the ALJ's findings and Plaintiff can only speculate that a consultative examination would reveal evidence that could possibly support her claim. (Doc. 24 at 13).

An ALJ has the duty to fully and fairly develop the record. *Coven v. Commissioner of Social Security,* 384 F. App'x. 949, 951 (11th Cir. 2010).  When a claimant alleges that an ALJ failed to develop the record, the claimant must make a showing of prejudice for the ALJ's failure to constitute reversible error. *Id.* at 951-52. To establish prejudice, Plaintiff bears the burden of

proving at least "that the ALJ did not have all of the relevant evidence before him in the record… or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler,* 761 F. 2d 1538, 1540-41 (11th Cir. 1985). There is no requirement that the ALJ specifically mention every piece of evidence in his determination as long as the decision is not a broad objection and the court considered the evidence as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). However, the ALJ must specifically state what weight is given to each item of evidence used in the consideration and provide reasons for so deciding. *Gibson v. Heckler,* 779 F. 2d 619, 623 (11th Cir. 1986).

In this case, the Court does not find that the ALJ erred by failing to develop the record. While Plaintiff argues that the ALJ should have appointed a medical expert to evaluate her mental impairments, Plaintiff has not shown that she has been prejudiced in this case by the ALJ's failure to do so. An ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). Here, sufficient evidence, as discussed above, supported the ALJ's decision, including the ALJ's consideration of Plaintiff's mental impairments. Accordingly, the Court will not remand on the grounds that the ALJ erred by failing to develop the record when he did not appoint a medical expert.

### C. Whether the ALJ erred in finding that Plaintiff's chronic back pain was non-severe.

Plaintiff alleges that the ALJ erred in finding that her chronic back pain was non-severe as the evidence of record shows that her back pain causes more than a minimal effect on her ability to work. (Doc. 21 at 19-20). Specifically, Plaintiff notes that consulting examiner Anand K. Rao, M.D. found that she cannot do any heavy work which requires lifting 75-100 pounds, contrary to the ALJ's finding that she can perform a full range of work at all exertional levels. (Doc. 21 at 19).

Defendant responds that Plaintiff failed to carry her burden of proving that her back condition was a severe impairment at step two of the sequential evaluation process. (Doc. 24 at 15). Furthermore, Defendant contends that even if the ALJ did err in not finding Plaintiff's back pain to be a severe impairment, the ALJ nevertheless noted that he considered all symptoms and conditions in the later steps of the sequential evaluation process. (Doc. 24 at 19). Thus, according to Defendant, even if Plaintiff's back pain was not found to be a severe impairment, it was still considered in reaching Plaintiff's RFC and no error occurred. (Doc. 24 at 19).

At issue here is step two of the ALJ's disability determination, where severity is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In this case, the Court finds that the ALJ did not commit reversible error by not finding that Plaintiff's back pain constituted a severe impairment at step two. At step two, the ALJ found that Plaintiff has the severe impairments of schizophrenia with psychosis, bipolar disorder and major depressive order. (Tr. p. 16). According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but

only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 824-25 (11th Cir. 2010). Even if an ALJ errs in his finding as to a plaintiff's severe impairments, the error is harmless so long at least one impairment is found. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). At step three an ALJ is required to demonstrate that he or she has considered all of the claimant's impairments, whether severe or not, in combination. *Heatly*, 382 F.App'x at 825. Here, the ALJ found that Plaintiff did have some severe impairments, thus satisfying the requirements of step 2.

Although the ALJ did not find Plaintiff's back pain constituted a severe impairment, the ALJ nevertheless considered the combined effects of the severe and nonsevere impairments in assessing the claimant's functional capacity to work, including Plaintiff's back pain. (Tr. p. 18-19). In his opinion, the ALJ specifically considered Plaintiff's back pain, but determined that Plaintiff failed to carry her burden of demonstrating that this pain constituted a severe impairment. The ALJ acknowledged that Plaintiff underwent a consultative examination by Dr. Rao in April 2011 where she reported a history of chronic back and left hip pain for a long time. (Tr. p. 17). The ALJ noted that Plaintiff described her back pain as sharp and radiating to the left hip and leg, but her physical examination was negative, except for only minor findings such as slight tenderness and slightly positive strait leg raise test on the right at about 85 degrees. (Tr. p. 17). The ALJ noted that Plaintiff's x-rays of the lumbrosacral spine were normal, her gait was normal and she required no assistive devices for ambulation, that she was able to get in/out of the chair and on/off the examination table easily, and that her range of motion was normal in the

cervical spine, shoulders, elbows, hands, and fingers. (Tr. p. 17). The ALJ further noted that in August 2011, progress notes from Suncoast Community Health Center revealed that Plaintiff denied having pain. (Tr. p. 17). The ALJ acknowledged that in February 2012, Plaintiff complained of back pain that had lasted several weeks that was made worse with walking, but also noted that in April 2012, Plaintiff again denied having any pain. (Tr. p. 17-18).

Given the ALJ's finding that Plaintiff had at least some severe impairments and that the ALJ nevertheless considered the impairments of Plaintiff's back pain, alone and in combination, in reaching his RFC finding, the Court finds that the ALJ's step two finding is supported by substantial evidence.

### D. Whether the ALJ erred in finding that Plaintiff was not entirely credible.

Plaintiff alleges that the ALJ erred in finding that she was not entirely credible. Plaintiff argues that the ALJ's decision was based on his finding that the statements made by Plaintiff's daughter's in an Adult Function Report were "suspiciously similar" to statements made by Plaintiff. (Doc. 21 at 20). Plaintiff takes issue with the ALJ's finding on two grounds. First, to the extent that the ALJ finds the statements "suspiciously similar," Plaintiff notes that in several respects the statements are dissimilar. (Doc. 21 at 21). Second, Plaintiff argues that the ALJ erred in finding that the consistency between the statements undermined Plaintiff's credibility. Plaintiff notes that the Regulations of the Social Security Administration provide that consistency between a claimant's statements and the rest of the record favors the credibility of a claimant, rather than undermines it. (Doc. 21 at 21-22).

Defendant responds that the ALJ properly assessed Plaintiff's pain and credibility. (Doc. 24 at 19). Plaintiff contends that the ALJ did not base his credibility finding solely on the consistency of Plaintiff and Plaintiff's daughter's statements, but rather upon a review of extensive

medical evidence as well as the various written statements in the record and Plaintiff's own testimony. (Doc. 24 at 20).

The Eleventh Circuit's three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote v. Charter,* 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel,* 185 F.3d 1211, 1215 (11th Cir. 1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination is reviewed for substantial evidence. *Marbury v. Sullivan,* 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain. See 20 C.F.R. § 404.1529.

In this case, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms were not entirely credible. The ALJ's finding on this point was not based solely on his observation that the statements by Plaintiff's daughter were "suspiciously similar" to Plaintiff's own statements, but upon a thorough review of Plaintiff's medical record. The ALJ noted in his credibility evaluation that Dr. Levy's evaluations which restrict Plaintiff's impairments to a level of mild to moderate. (Tr. p. 21). The ALJ also noted that the record shows numerous occasions

when Plaintiff was seen by different doctors but never consistently specified pain that the ALJ has deemed non-severe here. (Tr. R. 21-23). Plaintiff reported back pain on two different visits, but after the second visit when she received a prescription for medication for her back, Plaintiff made no mention on any of her subsequent visits of back pain. (*See* Tr. exhibits 1F-12F). In the same manner, Plaintiff alleges social limitations that would preclude her from working but the record generally reflects the claimant's ability to interact with family, friends and medical providers. (Tr. p. 197-219)

In addition, Plaintiff was found to be "non-compliant" with her prescribed medications. The ALJ emphasizes that the record shows that Plaintiff was in fact doing well on her medications when consistently following her medication schedule. (Tr. p. 23). This non-compliance calls into doubt the actual determinable level of severity of pain that Plaintiff would be experiencing has she been taking her medications. While the ALJ did not find Plaintiff's subjective complaints to be credible to the extent Plaintiff provided, he did incorporate her alleged difficulties in making the ultimate R.F.C. determination. The court finds that the ALJ's determination that Plaintiff's statements concerning her mental and physical impairments and their impact on her ability to work were not totally credible, is supported by substantial record evidence. (Tr. p. 22-23).

### E. Whether the ALJ erred at Step Five of the Sequential Evaluation.

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by relying on the testimony of a vocational expert who answered a hypothetical question that did not include all of Plaintiff's limitations. (Doc. 21 at 22-23). Defendant responds that the ALJ's hypothetical question encompassed all of the reasonable limitations Plaintiff had on her ability to work and, therefore, the ALJ properly relied on the vocational expert's testimony to conclude that Plaintiff could perform other work. (Doc. 24 at 24).

In this case, in order to assist with his step five analysis, the ALJ obtained testimony from a vocational expert. (Tr. p. 24, 47-48). The ALJ posed the following hypothetical question to the vocational expert:

> So if we were to assume a hypothetical individual of [Plaintiff]'s age, educational level and past work experience, who also has a residual functional capacity that includes no exertional limitations. This person is able to understand, remember and carry out simple step-by-step instructions, interact appropriately with supervisors, coworkers, and occasionally the general public, maintain attention and concentration for two hours at a time and adapt to routine changes in the workplace. Would there be any jobs in the regional and national economies that such a person could perform?

(Tr. p. 47). The vocational expert answered in the affirmative and listed three jobs such an individual could perform: silverware wrapper, assembler, and packager where packaging is done by hand. (Tr. p. 47-48).

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Winchell v. Comm'r of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v)). An ALJ may use the Medical Vocation Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform. *Id*. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

The operative question is whether the hypothetical question posed to the vocational expert encompassed all of Plaintiff's impairment. Here, the Court finds that the hypothetical question posed by the ALJ encompassed all of Plaintiff's impairments. As noted above, substantial

evidence supports the ALJ's RFC finding. Plaintiff's RFC was contained in the hypothetical question posed to the vocational expert, thus, the ALJ did not err in relying on the testimony the vocational expert gave in response to that question. Defendant carried its burden at step five and substantial evidence supports the ALJ's conclusion that Plaintiff could perform other work.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 22, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties